# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TRAMLAW REMAINDERMAN LIMITED PARTNERSHIP | CIVIL ACTION |
| VERSUS | NO. 17-12636 |
| WLM RETAIL TRUST | SECTION "L" (2) |

## ORDER AND REASONS

Before the Court is Defendant WLM Retail Trust's motion for judgment on the pleadings. R. Doc. 17. Plaintiff Tramlaw Remainderman, LP opposes. R. Doc. 25. For the reasons that follow, the motion is DENIED.

### I.    BACKGROUND

In 1991, Public Service Resources Corporation ("PRSC") purchased twenty-nine properties that were subject to long-term Wal-Mart leases (the "Transaction"). The structure of the Transaction was complex. First, PRSC formed WLM Retail Trust ("WLM"), which purchased an "Estate for Years" in each of the properties.[1] Next, to obtain significant tax benefits, Tramlaw Remainderman, LP ("Tramlaw") was formed to purchase a "remainder" interest in each property, subject to WLM's estate for years. The parties entered into an "Option and Estate for Years Agreement" for each of the twenty-nine properties.

On September 26, 1991, Tramlaw and WLM executed an "Option and Estate for Years Agreement" concerning property in Covington, Louisiana (the "Agreement"), at issue in this case. The Agreement gave WLM two options: (i) an option to ground lease the property upon the

---

[1] An "Estate for Years" is the right to the possession of land for a specified term, known in Louisiana as "usufruct."

1

expiration of the estate for years ("Ground Lease Option"), and (ii) an option to purchase Tramlaw's interest in the property upon the occurrence of certain events, including the expiration of a long-term lease ("Wal-Mart Lease") with Wal-Mart Stores, Inc. ("Purchase Option"). §3(B) of the Agreement states that WLM may exercise the Purchase Option whether those events occur "before or after" the expiration of the estate for years.

The issue in this case is whether WLM timely exercised the Purchase Option. The Wal-Mart Lease had an initial term of May 14, 1986 – January 31, 2012 and gave Wal-Mart the option to extend for five additional five-year terms. Wal-Mart extended the Lease through January 31, 2017, but did not extend a second time. On August 24, 2017, WLM notified Tramlaw that, since the Wal-Mart Lease had expired, it wished to exercise the Purchase Option. Tramlaw responded, however, that under §14 of the Agreement, the Purchase Option expired along with the estate for years on January 31, 2012 – five years earlier. §14 states that "[t]he Options contained in this Agreement shall terminate and be of no further force or effect upon the later of the expiration of (i) the Estate for Years or (ii) the Additional Notice Period."

Tramlaw filed this action seeking a declaration that WLM failed to timely exercise the Purchase Option before the estate for years expired in 2012. WLM argues that the Agreement expressly allows it to exercise the Purchase Option when the Wal-Mart Lease terminates, whether that occurs "before or after" the expiration of the estate for years.

II. **PRESENT MOTION**

WLM moves for judgment on the pleadings based on collateral estoppel. An Illinois state court decided a similar disagreement between the parties over §14 and the Purchase Option in WLM's favor (the "Illinois Action"). The Illinois Court of Appeal affirmed, and the Illinois Supreme Court denied Tramlaw's request for review.

The Illinois Action involved an agreement that was part of the same overall transaction as the Agreement in this case (the "Oklahoma Agreement"). There, as here, WLM attempted to exercise the Purchase Option upon termination of the Wal-Mart Lease after the estate for years had already expired. On cross-motions for summary judgment, the court held that WLM timely exercised the Purchase Option, §14 notwithstanding, because "[t]he clear and explicit language of §3(B) of the Option Agreement establishes the parties' intent was that the Purchase Option survive the Estate [for] Years if the Wal-Mart Lease had not yet terminated." Since §3(B) "expressly and unequivocally provides that WLM may exercise the Purchase Option after the expiration of the Estate for Years," the court reasoned, the parties clearly did not intend to terminate the Purchase Option along with the estate for years. Finally, the court rejected Tramlaw's contrary argument, reasoning that "[i]nterpreting § 14 as terminating the Purchase Option upon the expiration of the Estate for Years would render the Purchase Option illusory and frustrate the stated intent of the parties." The Illinois Court of Appeal affirmed and concluded that §14 "must be viewed as a mistake, an accident, or simply as a specific clause so repugnant to and subordinate to the general intent and purpose of the Agreement that it must be rejected and disregarded." *WLM Retail Tr. v. Tramlaw Remainderman Ltd. P'ship*, 2018 IL App (1st) 170819, ¶ 27, 99 N.E.3d 116, 122, *appeal denied sub nom. WLM Retail Tr. v. Tramlaw Remainderman Ltd. P'ship*, 98 N.E.3d 29 (Ill. 2018). WLM argues that the Illinois Action is entitled to preclusive effect. Tramlaw asserts that this action represents a new case or controversy between the parties, which Tramlaw is entitled to litigate in this Court.

Alternatively, WLM contends that Tramlaw fails to state a claim because the plain language of the Agreement gives WLM the right to exercise the Purchase Option "before or after" the expiration of the estate for years.

### III. LAW & ANALYSIS

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citing *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

A Rule 12(c) motion is governed by the same standard as a Rule 12(b)(6) motion. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Accordingly, a court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

In determining whether a state court judgment bars a later-filed federal action, a federal court must apply the "principles of the law of the state whose decision is set up as a bar to further litigation" – here, Illinois. *Production Supply Co. v. Fry Steel Inc.*, 74 F.3d 76, 78 (5th Cir. 1996) (quoting *E.D. Systems Corp. v. Southwestern Bell Tel. Co.*, 674 F.2d 453, 457 (5th Cir. 1982)). Under Illinois law, the party claiming collateral estoppel must establish that (i) there was a final judgment on the merits in the prior adjudication; (ii) the party against whom estoppel is asserted was a party or in privity with a party in the prior adjudication; and (iii) the issue decided in the

prior adjudication is identical to the issue presented in the present suit. *Gumma v. White*, 216 Ill. 2d 23, 38 (2005).

The Court finds that the differences between the Agreement at issue here and the agreement involved in the Illinois Action are fatal to WLM's collateral estoppel argument. Although §14 and §3 of the agreements are identical, the Illinois courts found additional proof of the parties' intent in several sections of that agreement that are either different or absent from the Agreement at issue here.

For example, §3(D) of the Oklahoma Agreement provided that "the Purchase Option shall not be exercisable after January 31, 2059" – a date long after the expiration of the estate for years. The Agreement here does not contain a §3(D) or analogous sunset provision. Additionally, both agreements state that, in the event of the expiration or termination of the Wal-Mart Lease, the purchase price was to be the greater of (i) the fair market value at the time, or (ii) a price listed in Schedule II of the agreement. Schedule II provides monthly values for the remainder interest, beginning when the agreement was executed and increasing by date. Schedule II of the Oklahoma Agreement listed dates far beyond the expiration of the estate for years. Schedule II of the Louisiana Agreement, though, ends in January 2012 – it does not provide values beyond the expiration of the estate for years. Finally, one of the events triggering the Purchase Option in the Oklahoma Agreement, §3(A)(a), could only be triggered after the "twentieth anniversary of the date" of the agreement. That anniversary fell after the estate for years expired. The Louisiana Agreement includes the same §3(A)(a) but, unlike the Oklahoma Agreement, the twentieth anniversary fell before the estate for years expired. In light of these differences, the Court finds that the issue presented here – whether WLM timely exercised the Purchase Option under the Louisiana Agreement – is not identical to the issue litigated in the Illinois Action.

The Court also finds that the petition in the present case states a claim for relief. WLM contends that the Agreement establishes that the Purchase Option did not automatically terminate with the estate for years, and that WLM timely exercised the option in 2017 when the Wal-Mart Lease expired. But "when considering a Rule 12(c) motion, a district court must accept the factual allegations of the complaint as true and resolve all ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Higbee Co. v. Greater Lakeside Corp.*, 2007 WL 196901, at *1 (E.D. La. Jan. 22, 2017). Because §14 states that the "options" terminate upon expiration of the estate for years, Tramlaw has sufficiently alleged that WLM failed to timely exercise the Purchase Option when the estate for years expired in 2012.

## IV.　CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant WLM's Motion for Judgment on the Pleadings, R. Doc. 17, is hereby **DENIED.**

New Orleans, Louisiana, this 29th day of August, 2018.

_____
**ELDON E. FALLON**
United States District Judge